UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA LEPINE,

Plaintiff,

v.

PAUL ROSENBAUM, ET AL.,

Defendants.

Case No. 19-cv-12577

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [#5]

### I. INTRODUCTION

On September 3, 2019, Plaintiff Jessica LePine ("Plaintiff") filed the instant action against Defendants Paul and Maureen Rosenbaum in their individual capacities and as corporate officers of SWR Asset Holding Company, LLC and SWR, Inc. (together, "Defendants"). *See* ECF No. 1. Plaintiff seeks declaratory judgment and an award of compensatory and exemplary damages. *Id.* at PageID.2.

Presently before the Court is Defendants' Motion to Dismiss, filed on November 15, 2019. ECF No. 5. Plaintiff filed a Response on November 27, 2019. ECF No. 10. Defendants filed their Reply on December 4, 2019. ECF No. 11. A hearing on Defendants' Motion was held on May 18, 2020. For the reasons that follow, the Court will **GRANT IN PART** Defendants' Motion to Dismiss [#5] as it

relates to the issue of personal jurisdiction over Defendant Maureen Rosenbaum. Additionally, the Court will **DENY IN PART** Defendants' Motion to Dismiss [#5] as it relates to the presented issues of statute of limitations and failure to state a claim upon which relief can be granted for Counts III and IV.

## II. BACKGROUND

The instant action stems from a promissory note ("Note") which SWR Corporation—a defunct Michigan business entity—executed to Plaintiff on June 14, 1994. ECF No. 5, PageID.69. Plaintiff claims that she "suffered financial and emotional harm and injury" when SWR Corporation disclaimed her $30,000 loan plus 15% annual interest, which was recorded in the Note. ECF No. 1, PageID.2.

### A. Plaintiff's Investment in SWR Corporation

In April 1994, Defendant Mr. Rosenbaum incorporated the Michigan business entity "SWR Corporation" (hereinafter, "SWR"). ECF No. 10, PageID.105. This entity manufactured a chemical cleaning product. ECF No. 1, PageID.6. According to the Michigan Department of Licensing and Regulatory Affairs, SWR is no longer active. ECF No. 5, PageID.69.

Two months later, on June 14, 1994, SWR executed the Note to Plaintiff in the amount of $30,000, with 15% annual interest. *Id.* Plaintiff asserts that she was induced into making this loan "at the behest of [Mr. Rosenbaum.]" ECF No. 10, PageID.105. The Note was signed by SWR's president Michael Sanchez and

attested by SWR Corporation's secretary Bradley Wallen.  ECF No. 5, PageID.69; *see also* ECF No. 1-2, PageID.49.  Mr. Rosenbaum did not sign or attest the Note nor is his name mentioned in the Note.  *Id.*  The Note provides the principal sum and interest rate per annum, which was "to be paid on demand any time on or after one (1) year following the date of [the] Note."  ECF No. 1-2, PageID.49.  It waives presentment, protest, or demand.  ECF No. 5, PageID.70.

Mr. Rosenbaum began operating two different Oregon companies—Defendants SWR Asset Holding Company, LLC and SWR, Inc. (together, "Oregon SWR")—in 2010.  *Id.*

### B. Payments Before July 1, 2013

Between 1996 and 2013, Plaintiff received checks from "Paul/SWR," totaling $29,000.  ECF No. 1, PageID.9.  These payments allegedly paid Plaintiff a modicum of interest; however, Defendants "never paid [her] the entire 15% annual interest[.]" *Id.*  Plaintiff asserts that over these years, she and Mr. Rosenbaum "frequently talked about SWR's financial obligation to her."  ECF No. 10, PageID.106.  She explains that "[a] couple of times the payments came from [Mr. and Ms. Rosenbaum's] personal checking account."  *Id.*  In her Complaint, Plaintiff lists each of the payments she received between 1996 and 2013.  *See* ECF No. 1, PageID.10.

In June 2013, Plaintiff explains that she and her husband met with Mr. Rosenbaum in Lansing, Michigan to discuss the Note and the outstanding interest.

ECF No. 10, PageID.106.  After this meeting, Mr. Rosenbaum gave Plaintiff a check for $1,000, which was dated July 1, 2013.  *Id.*  This was allegedly the last check Plaintiff received.  ECF No. 1, PageID.11.

Plaintiff asserts that Mr. Rosenbaum did not inform Plaintiff at this meeting that SWR was "defunct."  ECF No. 10, PageID.106.  Instead, Mr. Rosenbaum allegedly told Plaintiff and her husband that he would send Plaintiff another check when his personal stake in Rentrak stock hit $40/share.  *Id.*  Plaintiff claims that Mr. Rosenbaum never sent her a check.  ECF No. 10, PageID.107.

### C. March 2014 Correspondence

On March 12, 2014, Plaintiff sent Mr. Rosenbaum an email about his lack of payments.  ECF No. 5, PageID.70.  Plaintiff stated that she was "still $12,000 short of recouping [her] investment at a loss" and that she "never received the 15% annual interest[.]"  *Id.*  Mr. Rosenbaum responded to this email later that day, stating:

> WOW!!!!
> I detect some anger
> I knew the only reason you called me before your trip to New Orleans was to get a check.  In fact the last three times you called was really not to say hello.  ***I will send you a check soon.***
> True Rentrak is at 64 but I can assure you I sold out at a much lower price.

ECF No. 1, PageID.32 (emphasis in original).

Plaintiff responded to Mr. Rosenbaum's email the following day, asserting, among other things, "A promise is a promise … Dozens of times you said you'd give

4

me my money back.  Once it was dependent on Rentrak hitting $20 a share & most recently in front of [her husband] you said you would when Rentrak hit $40."  ECF No. 5, PageID.71.  Mr. Rosenbaum did not reply.  *Id.*

Plaintiff asserts that in a follow-up telephone conversation, Mr. Rosenbaum affirmed his promise to repay his debt.  ECF No. 10, PageID.107.  Mr. Rosenbaum also allegedly told Plaintiff that "he would give her a check if she met him in person, alone, in a hotel room during her New Orleans vacation with friends or at another location of her choosing."  *Id.*  Plaintiff purportedly refused this proposal.  *Id.*

**D. July 2019 Correspondence**

On July 19, 2019 Plaintiff reached out to Mr. Rosenbaum and Oregon SWR, demanding repayment of the loan and unpaid/overdue interest.  *Id.*  Mr. Rosenbaum responded from his personal email on July 23, 2019, explaining that the statute of limitations had run "on a company that is no longer in existence, signed by two officers of a company that I haven't talked to in over 25 years."  *Id.* at PageID.108.  Plaintiff asserts that this was the first time she heard SWR was defunct and that the Note was worthless.  *Id.*  She replied to this email on August 2, 2019, asking Mr. Rosenbaum for several documents and information related to SWR.  ECF No. 1, PageID.37.  Mr. Rosenbaum's attorney Harry Wilson responded on August 6, 2019, notifying Plaintiff of his representation.  *Id.* at PageID.38.

On September 3, 2019, Plaintiff filed her Complaint in this Court, alleging: (1) breach of contract against all Defendants (Count I); (2) declaratory judgment regarding successor liability against Defendants SWR Assets Holding Company, LLC and SWR, Inc. (Count II); (3) declaratory judgment regarding piercing Oregon SWR's corporate veil against Defendants Paul and Maureen Rosenbaum (Count III); and (4) exemplary damages against all Defendants (Count IV).  *See* ECF No. 1.

### III. LAW & ANALYSIS

Defendant presents three grounds for the Court to dismiss Plaintiff's Complaint at this juncture.  First, Defendants argue that Plaintiff's Complaint should be dismissed in its entirety because it is untimely under Michigan's statute of limitations.  ECF No. 5, PageID.66.  Second and third, and in the alternative, Defendants move to dismiss Plaintiff's third and fourth claims for relief for failure to state a claim and to dismiss the claims against Defendant Maureen Rosenbaum for lack of personal jurisdiction.  *Id.*  The Court shall address each argument in turn.

**A. Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) Because the Statute of Limitations Has Run**

**1. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss pursuant to

Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (applying the plausibility standard articulated in *Twombly*).

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of his factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). While courts are required to accept the factual allegations in a complaint as true, *Twombly,* 550 U.S. at 556, the presumption of truth does not apply to a claimant's legal conclusions. *See Iqbal,* 556 U.S. at 678. Therefore, to survive a motion to dismiss, the plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555) (internal citations and quotations omitted).

"A motion to dismiss based on the expiration of the statute of limitations is analyzed under Rule 12(b)(6)." *Future Now Enterprises, Inc. v. Foster*, 860 F. Supp. 2d 420, 427 (E.D. Mich. 2012) (citation omitted). A motion to dismiss on statute of limitations grounds "should be granted when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle [her] to relief." *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir. 2003) (citation and quotation marks omitted). Dismissal is appropriate "only if a complaint clearly shows that the claim is out of time." *Foster*, 860 F. Supp. 2d at 427 (citation omitted).

### 2. Analysis

Defendants first argue that Plaintiff's Complaint should be dismissed in its entirety because it is time barred. ECF No. 5, PageID.73. In her Complaint, Plaintiff asserts that the last payment she received was dated July 1, 2013. ECF No. 1, PageID.10, 11. Defendants argue that because she filed this action more than six years later—on September 3, 2019—the statute of limitations has run. ECF No. 5, PageID.73. Furthermore, Defendants contend that Plaintiff's attempts to "plead around the statute of limitations are meritless." *Id.* Specifically, Defendants argue that MCL § 600.5866 does not revive the statute of limitations because Mr. Rosenbaum's March 12, 2014 email does not contain an "unqualified and direct admission of a present debt." *Id.* at PageID.75. Defendants also assert that the

doctrine of equitable estoppel does not revive the statute of limitations because Mr. Rosenbaum did not knowingly conceal or falsely represent a material fact to induce Plaintiff to refrain from bringing an action. *Id.* at PageID.77.

Statutes of limitations "prevent plaintiffs from sleeping on their rights and prohibiting the prosecution of stale claims." *Wright v. Heyne,* 349 F.3d 321, 330 (6th Cir. 2003) (citing *Board of Regents of Univ. of State of N.Y. v. Tomanio,* 446 U.S. 478, 487–88 (1980)). In order to avoid a statute of limitations bar, a plaintiff must commence her action within a prescribed time frame measured from the date of when the claim accrues. *See Fonesca v. Consol. Rail Corp.*, 246 F.3d 585, 590 (6th Cir. 2001).

In diversity cases reliant on state law, federal courts are required to apply the law of the state's highest court[.]" *Foust v. Home Depot USA, Inc.*, 166 F.Supp.3d 881, 889 (E.D. Mich. 2016) (citing *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)). In Michigan, "a cause of action for breach of contract accrues when a contracting party fails to do what he is obligated to do under the contract." *Sunseri v. Proctor*, 487 F. Supp. 2d 905, 909 (E.D. Mich. 2007) (citation and quotation omitted). A breach of contract claim thus accrues on the date of the breach. *Isely v. Capuchin Province*, 880 F. Supp. 1138, 1145 (E.D. Mich. 1995). Michigan law provides for a six-year statute of limitations for breach of contract claims. Mich. Comp. Laws § 600.5807(9).

### a.  MCL § 600.5866

In her Complaint, she maintains that her action is not time barred.  For support, Plaintiff first relies on MCL § 600.5866 to revive the statute of limitations.  ECF No. 1, PageID.15–16.  She alleges that Mr. Rosenbaum's March 12, 2014 email falls under this statute.  *Id.*  Under Michigan law, a new promise to pay a debt that is otherwise barred by the statute of limitations can revive a claim upon written acknowledgment of that debt.  Mich. Comp. Laws § 600.5866.  The statute provides:

> Express or implied contracts which have been barred by the running of the period of limitation shall be revived by the acknowledgment or promise of the party to be charged.  But no acknowledgment or promise shall be recognized as effective to bar the running of the period of limitations or revive the claim unless the acknowledgment is made by or the promise is contained in some writing signed by the party to be charged by the action.

*Id.*

Michigan courts have explained that for an acknowledgement of a contractual obligation to revive a contract claim under MCL § 600.5866, the acknowledgment must contain "an unqualified and direct admission of a present subsisting debt which the party is liable and willing to pay and be unaccompanied by any circumstances or declarations which repel the presumption of a promise or intention to pay."  *Adams v. City of Detroit*, 591 N.W.2d 67, 70 (Mich. Ct. App. 1998) (internal citations and quotation marks omitted); *see also Frank W. Kerr Co. v. Sav-Mor Franchising, Inc.*, No. 16-cv-13880, 2018 WL 1141799, at *5 (E.D. Mich. Mar. 2, 2018).

Here, Plaintiff alleges that Mr. Rosenbaum's March 12, 2014 email "unequivocally promised in writing that he would pay the balance of the [N]ote." ECF No. 1, PageID.16.  Plaintiff first emailed Mr. Rosenbaum on March 12, 2014, stating:

> The success you mention below reminds me, when am I getting my SWR money back?  At this point, I am still $12,000 short of recouping my investment at a loss.  Needless to say, I never received the 15% annual interest that you personally promised and obviously have not received any financial benefit.  You told Pierre & I last summer you'd make good on it and would send a check when Rentrak hit $40.  It is now at $62.  When will you send that check?

ECF No. 10, PageID.120.

> Mr. Rosenbaum replied later that day, writing:

> WOW!!!!
> I detect some anger
> I know the only reason you called me before your trip to New Orleans was to get a check.  In fact the last three times you called was really not to say hello.  ***I will send you a check soon.***
> True Rentrak is at 64 but I can assure you I sold out at a much lower price.

ECF No. 1, PageID.17 (emphasis in original).

In their instant Motion, Defendants argue that Mr. Rosenbaum's email does not satisfy MCL § 600.5866 because it does not contain an "unqualified and direct admission of a present subsisting debt which" he was willing to pay.  ECF No. 5, PageID.75–76.  They rely on two Michigan Supreme Court decisions to support their position that Mr. Rosenbaum's email does not acknowledge the existence of a

present debt: *Throop v. Russel*, 108 N.W. 1013 (Mich. 1906) and *Halladay v. Weeks*, 86 N.W. 799 (Mich. 1901).[1]  *Id.* at PageID.76–77.

In *Throop*, the Michigan Supreme Court concluded that the evidence offered by the plaintiff was not "an acknowledgment of the indebtedness that a promise to pay could be inferred therefrom."  108 N.W. at 1015.  When the defendant failed to pay on three promissory notes, plaintiff brought suit and argued that several letters which he received from the defendant revived the statute of limitations.  *Id.* 1013.  In one letter, the defendant stated "I am working hard; next week will have auction sale that I am certain will give me money to pay you."  *Id.*  In another letter, he wrote "I will be able to send you $500.00 for myself on the 1st, and I have no doubt I will be able to secure you $500 on the lots."  *Id.* at 1014.  The court also analyzed a third letter, where the defendant said:

> Of course you have my notes.  I think they are outlawed, but that question need not enter into the matter.  If you say you will take $1,000 now and give me back my notes I will endeavor to make sale I spoke of in first part of letter.  If you do so and in the future need any money I will endeavor to give it to you.

*Id.*

---

[1] This Court takes judicial notice that the Michigan Court of Appeals has acknowledged that these decisions, though a century-old, "nonetheless comport with the current statute and guide our reading of it[.]"  *Adams*, 591 N.W. 2d at 70 (discussing the language of MCL§ 600.5866 and the Supreme Court of Michigan's holding in *Throop v. Russel*, 108 N.W. 1013 (1906)).

The court construed this last letter to be a "proposition by defendant, who knew the notes were outlawed, that if the plaintiff would surrender them [,] he would pay him $1,000." *Id.* Indeed, the plaintiff replied to this last letter stating, "I was very much surprised when I read your proposition and I do not feel that I can accept it." *Id.* at 1014–15. The court concluded that the proposition was "conditional." *Id.* at 1015. The court also distinguished defendant's letters from another Michigan Supreme Court case, *Rumsey v. Settle's Estate*, 79 N.W. 579 (1899). It emphasized how the letters in *Rumsey*, including one that said "I will say this, that every cent I owe you will be paid … and I owe you," contained "an explicit acknowledgment of the indebtedness and a promise to pay." *Id.* In *Throop*, the defendant's letter lacked an acknowledgement of his indebtedness; rather, defendant only offered a promise to pay plaintiff if he accepted the proposition.

In her Response, Plaintiff argues that *Throop* is "completely inapposite" to the instant action.[2] ECF No. 10, PageID.118. She explains that "[u]nlike the defendant in *Throop*, Defendants here did not repudiate [her] 3/12/14 request for her loan principle and interest. Indeed, [Mr. Rosenbaum] *acknowledge* [*sic*] the debt when he said he would *send [her] a check.*" *Id.* (emphasis in original). She also

---

[2] The Court notes that Plaintiff discusses *Throop* in her section responding to Defendants' arguments opposing the doctrine of equitable estoppel rather than in her section on MCL § 600.5866. *See* ECF No. 10, PageID.118.

emphasizes how the defendant in *Throop* never paid on the promissory notes, while Mr. Rosenbaum "consistently paid interest on [her] Note." *Id.*

While the Court disagrees with the relevance of Defendants' previous payments to the current analysis of whether Mr. Rosenbaum's statement is a direct admission of a present debt, the Court agrees with Plaintiff's argument that the instant action is distinguishable from *Throop*. Here, Mr. Rosenbaum does not dispute the assertions in Plaintiff's email that the debt still existed or that annual interest remained unpaid. Unlike the defendant in *Throop*, Mr. Rosenbaum agrees to send a payment. His statement that he would send a check was not conditional; he did not ask Plaintiff to consider a proposition. Plaintiff is correct to emphasize that if Mr. Rosenbaum "meant to renege on his promise in the 3/12/14 email, he would not have said 'I will send you a check soon.'" ECF No. 10, PageID.121.

The Court acknowledges Defendants' argument that Mr. Rosenbaum's statement is "ambiguous," as he makes a commitment to a "future payment at unknown future time." ECF No. 13, PageID.163. The Court emphasizes, however, that Michigan courts have declined to hold that particular "set form of words is necessary to constitute a sufficient acknowledgment of indebtedness[.]" *In re Booth's Estate*, 40 N.W.2d 176, 178 (Mich. 1949); *see also Throop v. Russel*, 108 N.W. 1013, 1014 (Mich. 1906). By drawing all reasonable references in Plaintiff's favor in this Motion to Dismiss, the Court is persuaded Mr. Rosenbaum's statement

that he would send a check is a "sufficient acknowledgment of indebtedness." *In re Booth's Estate*, 40 N.W.2d at 178.

Defendants also argue that Mr. Rosenbaum's email cannot revive the statute of limitations under MCL § 600.5866 since it "contains 'declarations which repel the presumption of a promise or intention to pay.'"  ECF No. 5, PageID.76. Defendants point to Mr. Rosenbaum's statement about Rentrak's stock price as "the condition on which [Mr. Rosenbaum] had supposedly earlier agreed to pay had not been satisfied."  *Id.*  Plaintiff contests Defendants' characterization of Mr. Rosenbaum's statement.  She argues that Mr. Rosenbaum's assertion, when read in conjunction with her initial email, "establish[es] that all parties were on notice that [Plaintiff] expected [Mr. Rosenbaum] to make good on his promise to send her a SWR check when his Rentrak stock hit $40/share."  ECF No. 10, PageID.120. Plaintiff emphasizes that Mr. Rosenbaum "does not question much less repudiate that fact." *Id.*

The Court recognizes that the instant Motion is designed to test the sufficiency of Plaintiff's Complaint.  It is therefore required to look at all of Plaintiff's allegations in a light most favorable to her.  By doing this, and drawing all reasonable references in Plaintiff's favor, the Court determines that it can make a reasonable inference here that Mr. Rosenbaum's email does not contain qualifications indicating that he had no intention of paying Plaintiff.  Indeed, Plaintiff alleges in

her Complaint that the parties discussed the Rentrak stock price during their June 2013 meeting.  ECF No. 1, PageID.11.  She purports that after Mr. Rosenbaum told her and her husband that he would send a check once his Rentrak stock hit $40/share, she "patiently waited and watched Rentrak's stock rise to $64/share" over the next eight months.  *Id.*  In his March 12, 2014 email, Mr. Rosenbaum informs Plaintiff that he sold his share "at a much lower price."  ECF No. 10, PageID.121.  He neither proposes a new condition for Plaintiff to accept nor rejects Plaintiff's averment to what the parties previously agreed to—he instead asserts he will send a check soon. *Id.*  The Court is therefore unpersuaded by Defendants' argument that Mr. Rosenbaum's email "repel[s] the presumption of a promise or intention to pay." ECF No. 5, PageID.76.

In sum, the Court finds that Mr. Rosenbaum's email contains an unqualified and direct admission of a present debt to Plaintiff pursuant to MCL § 600.5866.  The statute of limitations was therefore revived on March 12, 2014 and this cause of action was timely filed on September 3, 2019.   Accordingly, the Court will deny Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the statute of limitations has run.

Given that the Court has determined that Plaintiff's Complaint is not time barred pursuant to MCL § 600.5866, it finds that it does need to address Plaintiff's allegation for—and Defendants' present argument against—the doctrine of

equitable estoppel's application to the instant action. *See* ECF No. 1, PageID.17; ECF No. 5, PageID.77–80.

## B. Defendants' Motion to Dismiss All Claims Against Ms. Rosenbaum Pursuant to Federal Rule of Civil Procedure 12(b)(2) for Lack of Personal Jurisdiction

In the alternative, Defendants argue that the Court should dismiss all claims against Defendant Maureen Rosenbaum for lack of personal jurisdiction. ECF No. 5, PageID.83. Defendants assert that Ms. Rosenbaum lacks sufficient contacts with Michigan to permit the exercise of either "general" or "specific" jurisdiction over her in the instant action. *Id.*

### 1. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). District courts may decide a 12(b)(2) motion before trial in one of three ways: (1) on the basis of affidavits alone; (2) by permitting discovery in aid of deciding the motion; or (3) by conducting an evidentiary hearing on the motion. *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citation omitted); *see also GM L.L.C. v. Autel.US Inc.*, No. 14-14864, 2016 U.S. Dist. LEXIS, at *7 (E.D. Mich. Mar. 29, 2016). "The court has discretion to select which method it will follow[.]" *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (internal citation omitted).

The plaintiff bears the burden of establishing personal jurisdiction. *Air Prods. And Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras*, 875 F.2d at 1214). In the face of a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff "may not stand on [her] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *GM L.L.C.*, 2016 WL U.S. Dist. LEXIS, at *7 (internal citation and quotation marks omitted). If the court decides the motions on the affidavits, as this Court will do in the instant matter, "the plaintiff must make only a prima facie showing of personal jurisdiction in order to defeat dismissal." *Theunissen*, 935 F.2d at 1458. The plaintiff can meet her burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Lexon Ins. Co. v. Devinshire Land Dev., LLC*, 573 Fed. App'x 427, 429 (6th Cir. 2014).

When the court decides a Rule 12(b)(2) motion on such written submissions, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Serras*, 875 F.2d at 1214 (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). "In sharp contrast to summary judgment procedure, however, the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459 (citing *Serras*, 875 F.2d at 1214). By not considering the moving party's controverting assertions, non-resident defendants are thus prevented from "regularly

avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts."[3]  *Id.*  A district court must construe the presented facts in the light most favorable to the non-moving party and "may not consider conflicting facts offered by [the moving party]."  *GM L.L.C.*, 2016 U.S. Dist. LEXIS 40902, at *7–8 (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)).

### 2. Analysis

Plaintiff alleges both general *in personem* and specific jurisdiction over Ms. Rosenbaum in her Complaint.  ECF No. 1, PageID.5.  In their instant Motion, Defendants contest this Court's ability to exercise both forms of personal jurisdiction.  ECF No. 5, PageID.83.  The Court will address each of Defendants' arguments in turn.

### a. General Jurisdiction

General personal jurisdiction provides a court possessing proper subject matter jurisdiction with the authority "to enter a binding personal judgment [over the defendant] regardless of where the facts or circumstances giving rise to the cause of

---

[3] Defendant Maureen Rosenbaum filed a declaration in support of Defendants' Motion to Dismiss on November 15, 2019.  *See* ECF No. 6.  Defendants cite to this declaration for the exclusive purpose of supporting their third argument: that this Court should dismiss all claims against Ms. Rosenbaum for lack of personal jurisdiction.  ECF No. 5, PageID.83–88.  Plaintiff opposed Defendants' use of this declaration in their Response.  *See* ECF No. 10, PageID.110–11.  The Court will only consider the factual assertions in this declaration which do not conflict with Plaintiff's alleged facts in her Complaint as they relate to establishing personal jurisdiction over Ms. Rosenbaum.

action may have occurred, in the state or out." *Theunissen*, 935 F.2d at 1463 n.4 (internal citation omitted).   Michigan subjects individuals to general personal jurisdiction of its courts in three instances: (1) the defendant's presence in the state at a time when process is served; (2) the defendant's domicile in the state at the time when process is served; or (3) when the defendant has consented to jurisdiction. Mich. Comp. Laws § 600.701.  Plaintiff has not established any of these three criteria for Ms. Rosenbaum.

First, Plaintiff does not allege that Ms. Rosenbaum received service of process in Michigan.  Second, Plaintiff does not assert that Ms. Rosenbaum is a Michigan domiciliary.  The Court notes that for an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (citation omitted).  Here, the parties do not contest that Ms. Rosenbaum is domiciled in Oregon.  ECF No. 5, PageID.84; ECF No. 6, PageID.191; *see also* ECF No. ECF No. 1, PageID.5.  Third and finally, Plaintiff does not allege that Ms. Rosenbaum consented to jurisdiction in Michigan.  Accordingly, Plaintiff has not established any of the criteria under MCL § 600.701 for Ms. Rosenbaum, in her individual capacity, to be subject to general personal jurisdiction in this Court.

Notably, Plaintiff does not contest Defendants' argument that this Court does not have general jurisdiction over Ms. Rosenbaum in her Response.  Rather, Plaintiff only includes a specific jurisdiction analysis.  *See* ECF No. 10, PageID.129–33.

In sum, the Court finds that Plaintiff has not established a prima facie case for exercising general personal jurisdiction over Ms. Rosenbaum.    Accordingly, the Court must determine whether Ms. Rosenbaum is subject to specific jurisdiction.

### b.  Specific Jurisdiction

Alternatively, Plaintiff alleges that personal jurisdiction for Ms. Rosenbaum can be satisfied through specific jurisdiction.  ECF No. 1, PageID.5; ECF No. 10, PageID.129.  Specific jurisdiction "grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state."  *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012) (citation omitted).  A federal court in a diversity case must apply the law of the forum state to determine whether it can exercise specific jurisdiction over a nonresident.  *LAK, Inc. v. Deer Creek Enters.,* 885 F.2d 1293, 1298 (6th Cir. 1989).

 "Where the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process."  *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003).  The Michigan Supreme Court has construed Michigan's Long-Arm Statute for

individuals, Mich. Comp. Laws § 600.705, to bestow the broadest possible grant of personal jurisdiction consistent with due process. *See Sifers v. Horen*, 188 N.W.2d 623 (1971). "Under Michigan's Long-Arm Statute, the state's jurisdiction extends to the limits imposed by the Due Process Clause"; thus, the two inquiries become one. *See Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 741 (E.D. Mich. 2004) (internal citations omitted).

The Court must therefore determine whether the exercise of specific personal jurisdiction over Ms. Rosenbaum comports with constitutional due process. "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 227, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). In order for a nonresident defendant to be subject to personal jurisdiction, she must have "certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citations, quotation marks, and ellipsis omitted). The Sixth Circuit has adopted a three-prong test for determining whether the exercise of jurisdiction comports with due process:

> First, the defendant must purposefully avail [herself] of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Conn v. Zakharov*, 667 F.3d 705, 713 (6th Cir. 2012).

Here, in order to establish specific jurisdiction over Ms. Rosenbaum, Plaintiff therefore has the burden of showing that (1) Ms. Rosenbaum purposely availed herself of the privilege of acting in Michigan; (2) the cause of action arises from Ms. Rosenbaum's activities in Michigan; and (3) that the exercise of personal jurisdiction over Ms. Rosenbaum is reasonable. *See Zakharov*, 667 F.3d at 713.

The "constitutional touchstone" of due process is whether the defendant has purposefully established minimum contacts in the forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 473 (1985). Purposeful availment exists "where the defendant's contacts with the forum state proximately result from actions by the defendant [*herself*] that create a substantial connection with the forum State … and where the defendant's conduct and connection with the forum are such that [s]he should reasonably anticipate being haled into court there." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (citations and quotation marks omitted) (emphasis in original). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person[.]'" *Burger King Corp.*, 471 U.S. at 475 (internal citations omitted). Accordingly, a nonresident defendant who deliberately engages in "significant activities within a State" or creates "continuing obligations between [herself] and

residents of the forum" satisfies the first requirement.  *Id.* at 475–76 (citations and quotation marks omitted).

Here, Plaintiff avers only that the Court has jurisdiction over Ms. Rosenbaum by virtue of the fact that the SWR product is "continuously manufactured" in Detroit, Michigan.  ECF No. 1, PageID.4.  She asserts this same argument in her Response to the instant Motion, stating "[b]y virtue of the SWR product being manufactured in Detroit and nowhere else – [Ms. Rosenbaum] has direct ties to Michigan and has 'purposely availed' herself of Michigan's opportunities."  ECF No. 10, PageID.131–32.  Plaintiff also emphasizes that Ms. Rosenbaum is the president of the corporate defendants in the instant matter.  *Id.*

The Court finds that these facts, even when considered in the light most favorable to Plaintiff, fail to establish that Ms. Rosenbaum purposefully availed herself of the privilege of acting in Michigan in her individual capacity.  The Sixth Circuit has determined that jurisdiction over individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation.  *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000).  "[W]here an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e. whether she purposefully availed herself of the forum and the reasonably foreseeable consequences of that availment."

*Id.*  Accordingly, Plaintiff's allegations concerning the location of the corporate defendants' manufacturing plant and Ms. Rosenbaum's status in the corporate structure are insufficient to permit the Court to assert specific personal jurisdiction over Ms. Rosenbaum.

At the hearing, Plaintiff argued that Ms. Rosenbaum's joint, personal bank account with Mr. Rosenbaum in Oregon is an additional contact sufficient to allow the exercise of specific jurisdiction over Ms. Rosenbaum.  The Court determines that this alleged contact is also insufficient.  Specifically, the Court finds that it would be difficult to characterize Ms. Rosenbaum's relationship to Michigan—in her individual capacity—as anything other than "a result … of the unilateral activity of another party or a third person."  *Burger King Corp.*, 471 U.S. at 475 (citation omitted).  The Court denotes that Plaintiff does not aver that Ms. Rosenbaum signed any of the two checks from 2009 and/or 2010.  ECF No. 1, PageID.28, 106.  Rather, Plaintiff asserts that these two checks were signed by Mr. Rosenbaum, who "wrote 'SWR' across from his signature."[4]  *Id.*

Mr. Rosenbaum's unilateral activity of signing the checks to Plaintiff cannot establish this Court's specific personal jurisdiction over Ms. Rosenbaum.  Indeed, the basis of the instant action is Plaintiff's alleged "financial and emotional harm

---

[4] The Court also notes that the two checks which Plaintiff attached to her Response were also signed by Mr. Rosenbaum from Oregon SWR's bank account.  *See* ECF Nos. 10-3, 10-4.

and injury," which she suffered when SWR Corporation disclaimed a loan to her. ECF No. 1, PageID.2.  Plaintiff avers that she made this loan "at the behest of [Mr.] Rosenbaum," not Ms. Rosenbaum.  *Id.*  Plaintiff does not present any evidence to the Court that Ms. Rosenbaum initiated any contacts herself in Michigan other than the fact that she shares a bank account with Mr. Rosenbaum who sent two checks in 2009 and/or 2010.  At best, Ms. Rosenbaum's shared bank account is a tangential contact to Mr. Rosenbaum's unilateral action of sending Plaintiff these two checks.

Furthermore, the Court notes that even if Ms. Rosenbaum signed the two checks from her personal bank account with Mr. Rosenbaum, such a contact on its own would still be insufficient.  In *Walden v. Fiore*, the Supreme Court emphasized that the "'minimum contacts' analysis looks at the defendant's contacts with the forum State itself, not the defendant's contacts with the persons who reside there." 571 U.S. 277, 285 (2014).  Therefore, a "plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over [her]." (citation omitted).  *Walden* accentuates the need to examine a defendant's contact with a particular forum in order to evaluate specific jurisdiction. Here, the two checks from Defendants' bank account in Oregon, on its own, cannot establish the necessary connection with Michigan; rather, it demonstrates their connection to Plaintiff who resides in Michigan.

In sum, the conduct alleged does not demonstrate that Ms. Rosenbaum had a substantial connection to Michigan, such that traditional notions of fair play and substantial justice would lead her to believe that she might be haled into court in Michigan or that she, in her individual capacity, "purposefully availed" herself of this forum.[5]  The Court therefore dismisses Maureen Rosenbaum from this action.

### C. Defendants' Motion to Dismiss Counts III and IV Pursuant to Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim

Finally, Defendants argue that the Court should dismiss Plaintiff's third and fourth claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 5, PageID.80.  The Court will analyze Defendants' argument under the same legal standard set forth in "Section A" and will therefore construe the Complaint in a light most favorable to Plaintiff, accepting all of her factual allegations as true.  *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

Moreover, in a complaint averring fraud or mistake, "the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003).  "When a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject

---

[5] Given that the Court has determined that Ms. Rosenbaum has not "purposefully availed" herself of Michigan's opportunities in her individual capacity, it finds that it does not need to make a further determination of whether Plaintiff has met her burden in establishing the remaining two prongs of the constitutional analysis at this juncture.

to Fed. R. Civ. P. 9(b)." *Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (citation omitted).  Rule 9(b) ensures that a defendant is provided "fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988).

### 1.  Count III – Corporate Veil Piercing

#### i.    Choice of Law

In Count III of her Complaint, Plaintiff alleges that Defendants are "hiding behind SWR's corporate veil in an unjust and unlawful effort to deprive [her] of her financially valuable loan principle and overdue, underpaid/unpaid interest."  ECF No. 1, PageID.25.  Plaintiff thus seeks a declaratory judgment that the Court may pierce the corporate veil and hold Defendants in their individual capacities liable for the debts of SWR and Oregon SWR.  *Id.*

Under the *Erie* doctrine, in actions brought in federal court invoking diversity jurisdiction, a court must apply the same substantive law as would have been applied if the action had been brought in a state court of the jurisdiction where the federal court is located.  *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007) (citations omitted).   The Court must then determine which state's law applies according to Michigan's choice of law principles.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941) (determining that federal courts apply choice of

law principles of the state where the federal court is located).  Defendants assert that Oregon law, as the state of incorporation of Oregon SWR, must be analyzed to determine if the corporations' veils should be pierced.  ECF No. 5, PageID.80. Plaintiff advocates for Michigan law, arguing that there are sufficient contacts in the forum state.  ECF No. 10, PageID.125.  At the hearing, the parties agreed that corporate veil piercing law under Oregon and Michigan are similar.  The Court determines that no actual conflict exists between Oregon's and Michigan's substantive law; the choice-of-law question is thus not outcome-determinative here.

Under Oregon law, corporate shareholders enjoy limited liability, as "they are not responsible for the debts of a corporation beyond their capital contribution." *Salem Tent & Awning Co. v. Schmidt*, 719 P.2d 899, 903 (Or. Ct. App. 1986) (citations omitted).  There are three criteria for imposing liability on members or shareholders: (1) the member or shareholder controlled the corporation; (2) the member or shareholder engaged in improper conduct in their exercise of control over the corporation; and (3) the member or shareholder's improper conduct caused plaintiff's inability to obtain an adequate remedy from the corporation.  *Rice v. Oriental Fireworks Co.*, 707 P.2d 1250, 1255 (Or. Ct. App. 1985).  A plaintiff must plead and prove these three criteria in order to secure the benefit of piercing a corporate veil.  *Salem Tent & Awning Co.*, 719 P.2d at 903.  Oregon courts have been "extremely reluctant to disregard the corporate form unless exceptional

circumstances exist." *City of Salem v. H.S.B.*, 733 P.2d 890, 894 (Or. 1987) (en banc) (citing *Amfac Foods v. Int'l Systems*, 654 P.2d 1092 (1982)).

Michigan law likewise generally insulates corporate officer and shareholders from personal liability for corporate obligations. *See Foodland Distribs. v. Al-Naimi*, 559 N.W.2d 379, 381 (Mich. Ct. App. 1996). A company's corporate form, or "corporate veil," may be pierced "where an otherwise separate corporate existence has been used to subvert justice or cause a result that is contrary to some overriding public policy." *Servo Kinetcs, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007) (internal quotation marks, alteration, and citations omitted). Michigan courts have applied the following standard for piercing the corporate veil:

> First, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff.

*SCD Chem. Distribs., Inc. v. Medley*, 512 N.W.2d 86, 90 (Mich. Ct. App. 1994).

Here, the choice-of-law rules favor application of Michigan law. While a corporate veil piercing claim is based in equity,[6] it includes elements of fraud and is

---

[6] "It is well established that piercing the corporate veil is not itself a cause of action." *Brennan v. Nat'l Action Fin. Servs., Inc.*, No. 12-CV-10551, 2012 WL 3888218, at *3 (E.D. Mich. Sept. 7, 2012). This is because piercing the corporate veil is an equitable theory or remedy, rather than a cause of action upon which relief can be granted. *See Keystone Mfg., LLC v. Accuro Med. Products, LLC*, No. 1:12-CV-1186, 2013 WL 2318885, at *4 (W.D. Mich. May 28, 2013). The Court notes that Plaintiff pleaded this claim in her request for a declaratory judgment that the Court may pierce the corporate veil (Count III).

thus akin to an action in tort for choice-of-law purposes. *See Lim v. Miller Parking Co.*, 560 B.R. 688, 705 (E.D. Mich. 2016) (citation omitted). Federal courts sitting in Michigan "use another state's law [only] where the other state has a significant interest and Michigan has only a minimal interest in the matter." *Hall v. General Motors Corp.*, 582 N.W.2d 866, 868 (Mich. Ct. App. 1998). Here, there is no suggestion that either of those conditions exist. Accordingly, the Court will apply the law of the forum—Michigan law—to decide the corporate veil piercing claim.[7] *See Williams v. Toys "R" Us*, 138 F. App'x 798, 803 (6th Cir. 2005).

### ii. Analysis

In their instant Motion and at the hearing, Defendants argue that Plaintiff fails to state a claim to pierce Oregon SWR's corporate veils.[8] ECF No. 5, PageID.80.

"The doctrine of piercing the corporate veil … is the rare exception, applied in the case of fraud or certain other exceptional circumstances, and usually determined on a case-by-case basis." *Dole Food Co. v. Patrickson*, 538 U.S. 468,

---

[7] The Court notes that this conclusion also avoids applying different state's laws to different issues in the instant action. The process of dépacage would increase the complexity of the Court's analysis and application.

[8] In their instant Motion and at the hearing, Defendants argue that Plaintiff has "failed to state any well-pleaded allegations supporting the third requirement to pierce the corporate veil: that [Mr. and Ms.] Rosenbaum's alleged improper conduct *caused* [P]laintiff's inability to obtain an adequate remedy from SWR Oregon." ECF No. 5, PageID.81. The Court notes that in Defendants' Motion, they cited to Oregon law in their analysis. However, as explained in the previous section and as acknowledged by the parties at the hearing, the legal standards for assessing a claim to pierce the corporate veil in Oregon and Michigan are similar.

475 (2003) (citation omitted).  A court's decision whether to pierce the corporate veil "is highly dependent on the equities of the situation, and the inquiry tends to be intensely fact-driven."  *Servo Kinetcs, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007).  To reiterate, a corporate veil piercing claim under Michigan law requires proof that (1) the corporate entity is merely an agent or instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss or injury.  *SCD Chem. Distribs., Inc. v. Medley*, 512 N.W.2d 86, 90 (Mich. Ct. App. 1994).  The Sixth Circuit has considered additional, specific factors that shed light on these broader inquiries, including "undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 302–03 (6th Cir. 2005) (quoting *Laborers' Pension Tr. Fund v. Sidney Weinberger Homes, Inc*., 872 F.2d 702, 704–05 (6th Cir. 1988)).

As to the first element—whether the corporate entity was a mere instrumentality of another entity—the Court finds that Plaintiff has alleged facts which, if proven, permit the conclusion that Oregon SWR is a mere instrumentality of Mr. Rosenbaum.  Plaintiff alleges that Oregon SWR's email account does not

exist; rather, Mr. Rosenbaum uses his personal email address, exitpoll@aol.com, which is "the only way to contact [Oregon] SWR via email." ECF No. 1, PageID.27. In her Complaint, Plaintiff includes an email error notification she received on July 19, 2019 when she attempted to email Oregon SWR's address. *Id.* Further, she avers that "not all the checks [she] received from [Oregon] SWR were written on a check with the 'SWR' name on it." *Id.* at PageID.28. She asserts that "the check(s) from 2009 and/or 2010 were written on [Mr. and Ms. Rosenbaum's] personal bank account in Oregon, listing both their names and home address, [Mr. Rosenbaum] wrote 'SWR' across from his signature." *Id.*

Moreover, Plaintiff avers that Mr. Rosenbaum abused the corporate form when he told her that he would send a check when his personal Rentrak stock hit $40/share. *Id.* According to Plaintiff, Mr. Rosenbaum's "use of proceeds from his own personal stakes in a publicly traded stock to pay" Plaintiff is further proof that "[Oregon] SWR is merely an instrumentality." She also avers that Mr. Rosenbaum has ignored the proprieties of the corporate form in other ways, such as failing to keep regular annual meeting minutes for the two entities and choosing to pay for personal expenses out of the funds and bank accounts of the two entities. *Id.* at PageID.39.

These allegations specifically touch upon whether the corporate formalities were honored and whether Oregon SWR was used as an instrumentality for the

benefit of Mr. Rosenbaum. *See GKN Driveline Newton LLC v. Stahl Specialty Co.*, No. 15-cv-14427, 2016 WL 1746012, at *6 (E.D. Mich. May 3, 2016) (finding that while plaintiff's allegations did not touch upon whether the corporation was undercapitalized or whether the corporation maintained separate books and finances, its allegations did adequately assert facts to satisfy the first prong of the veil-piercing test, including "that corporate formalities were not honored, and that [the corporation] was used as an instrumentality"). As the Court must construe the Complaint in a light most favorable to Plaintiff and accept all of its factual allegations as true, *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008), such allegations provide a sufficient basis upon which Plaintiff could satisfy the first prong of the veil-piercing test.

Next, the second "fraud or wrong" element of the test requires that Plaintiff's Complaint must have stated allegations that the corporate entity was used to commit a fraud or wrong. *Servo Kinetics*, 475 F.3d at 798. In her Complaint, Plaintiff alleges that Mr. Rosenbaum committed "fraud/misrepresentation about SWR's dissolution [which] shreds the corporate veil." ECF No. 1, PageID.28. She avers that Mr. Rosenbaum "informally transferred the trade name, good will, and corporate assets of [] SWR Corporation to [Defendants SWR Asset Holding Company, LLC and SWR, Inc.] without [a] formal, lawful process in doing so." *Id.* at PageID.8. In her Response, Plaintiff explains that Mr. Rosenbaum "committed traditional fraud and

silent fraud by not disclosing to creditors that 'Old SWR' dissolved in 2010. Instead, [he] organized two Oregon SWRs, quietly transferred all of the assets of Old SWR to them and dishonored the debts of Old SWR." ECF No. 10, PageID.125. Indeed, in her Complaint, Plaintiff purports that Mr. Rosenbaum's failure to inform former creditors was "done to frustrate and unjustly circumvent the creditors of the former SWR Corporation." ECF No. 1, PageID.8, 38.

The Court denotes that "[t]he mere fact that a corporation commits an unfair labor practice, or breaches a contract, or commits a tort, does not mean that the individual shareholders of the corporation should personally be liable." *GKN Driveline Newton LLC*, 2016 WL 1746012, at *6 (citations omitted). Indeed, "[t]he act of the shareholders disregarding the separateness of the corporate identity must cause the injustice or inequity." *Id.* Here, Plaintiff has alleged that Mr. Rosenbaum's "false representations demonstrate a concerted effort aimed directly at subverting justice and scaring [her] away from enforcing her valid claim worth hundreds of thousands of dollars on a loan that had no expiration date." ECF No. 1, PageID.43. Plaintiff details the alleged fraud/misrepresentation, asserting: (1) "[i]n March 2014, SWR was alive and well in Oregon and [Mr. Rosenbaum] stated/promised that he would send [Plaintiff] a check, [Mr. Rosenbaum] lied, he did not fulfill the promise"; (2) "[i]n 2019, [Mr. Rosenbaum] changed his story, in reply to [Plaintiff's] demand for her money, [Mr. Rosenbaum] stated that [Plaintiff] could

not receive her principle loan and overdue/underpaid interest because SWR had dissolved in 2010 therefore her Promissory Note was worthless, and the statute of limitations for breach of contract had passed long ago"; and (3) Mr. Rosenbaum "then doubled down and enlisted a high powered Oregon lawyer, Harry Wilson, to scare off [Plaintiff] and make her believe that her claim was stale and that she had 'no claims against [his] clients, legal action would be frivolous and inappropriate." *Id.* Since these allegations suggest that the inequities stemmed from Mr. Rosenbaum's disregard of Oregon SWR's separate corporate identity, Plaintiff's allegations are sufficient to establish the second prong of the veil-piercing test.

Finally, the third "unjust loss" element of the veil-piercing test requires that Plaintiff allege that she suffered an unjust loss. *Servo Kinetics*, 475 F.3d at 798. Plaintiff avers that Mr. Rosenbaum's "wrongful actions as CEO of [Oregon] SWR" intentionally deprive her of "hundreds of thousands of dollars. ECF No. 1, PageID.39. Specifically, Plaintiff avers that Mr. Rosenbaum is "hiding behind the corporate veil of the successor SWRs to unjustly and wrongfully retain the benefit of [her] $30,000 [loan], renege on his promise to pay principal and 15% annual interest, and yet continue to operate 'SWR Corporation' uninterrupted." *Id.* Accordingly, as Plaintiff has claimed losses "of hundreds of thousands of dollars," there are sufficient allegations of loss under the third prong.

Accordingly, in viewing Plaintiff's allegations in the most favorable light, the Court finds that Plaintiff has set forth a viable basis for the corporate veil piercing claim. The Court will thus deny Defendants' Motion to Dismiss Count III.

### 2. Count IV – Exemplary Damages

Defendants further request that the Court dismiss Plaintiff's claim for exemplary damages pursuant to Federal Ruel of Civil Procedure 12(b)(6). ECF No. 5, PageID.82. Plaintiff alleges that an award of exemplary damage is appropriate due to Mr. Rosenbaum's "fraudulent behavior and sexual harassment."[9] ECF No. 1, PageID.42; *see also* ECF No. 10, PageID.127.

Unlike the corporate veil piercing claim, the parties agree that the Court should analyze Plaintiff's claim for exemplary damages under Michigan Law. *See* ECF No. 5, PageID.82; ECF No. 10, PageID.127. In Michigan, a plaintiff may recover exemplary damages for a breach of commercial contract only if the parties

---

[9] As to her claims of Mr. Rosenbaum's sexual harassment, Plaintiff purports that Mr. Rosenbaum's "indecent proposal tying [her] receipt of a SWR check to her willingness to meet him in a hotel room was offensive, demeaning sexual harassment in one of its worst forms." ECF No. 1, PageID.44. Further, Plaintiff asserts that Mr. Rosenbaum's alleged conduct "is oppressive, inappropriate, and illegal for any CEO to demand sexual favors for return on a loan/investment." *Id.* The Court finds that Plaintiff's factual allegations are insufficient to state a claim showing that she is entitled to relief. Indeed, Plaintiff fails to recite the elements of a sexual harassment claim; she only includes conclusory statements concerning Mr. Rosenbaum's alleged demeaning conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court will therefore only address the alleged fraud/misrepresentation in Plaintiff's claim for exemplary damages.

contracted for such damages or for tortious conduct independent of the breach. *Kewin v. Massachusetts Mut. Life Ins. Co.*, 295 N.W.2d 50, 55 (Mich. 1980). "[T]he theory underlying the denial of exemplary damages in breach of contract cases is that the plaintiff is adequately compensated when damages are awarded by reference only to the terms of the contract." *Id.* In order to justify an exemplary damages award for tortious conduct, "the act or conduct complained of must be voluntary and the act must inspire feelings of humiliation, outrage, and dignity." *McPeak v. McPeak*, 593 N.W.2d 180, 183 (Mich. Ct. App. 1999) (citation omitted). "The act or conduct must be so malicious or so willful and wanton as to demonstrate a reckless disregard of plaintiff's rights." *Id.*

In their instant Motion, Defendants argue that because Plaintiff "has failed to allege any facts that [P]lainitff and SWR [] contemplated any additional damages at the time" of contracting, the Court should dismiss Count IV. ECF No. 5, PageID.82. Defendants do not address Plaintiff's allegations of Defendants' tortious conduct, however. In her Complaint, Plaintiff avers that "Paul/SWR" committed fraud/misrepresentation in an effort to subvert justice and to scare Plaintiff away from enforcing her valid claim. *See* ECF No. 1, PageID.42–43. The Court finds that Defendants are on notice of Plaintiff's allegations concerning the tortious conduct contained in Count IV. ECF No. 1, PageID.42–44.

While Defendants are correct to argue that Plaintiff has failed to allege facts that she and SWR Corporation contemplated any additional damages at the time the contract was made, this deficiency on its own does not foreclose the possibility of an award for exemplary damages. As explained above, Plaintiff alleges tortious conduct independent of the breach of contract in Count IV. With respect to the claim of fraud/misrepresentation in Count IV, an award of exemplary damages may be appropriate. *See, e.g.*, *LaSalle Nat'l Leasing Corp. v. Lyndecon, LLC*, 409 F. Supp. 2d 843, 847 (E.D. Mich. 2005) (citing *Oppenhuizen v. Wennersten*, 139 N.W.2d 765 (Mich. Ct. App. 1966)). Plaintiff alleges that she is "deeply troubled, embarrassed, and outraged about the whole experience surrounding the Promissory Note and especially about being lied to[.]" ECF No. 1, PageID.44.

In order to grant Defendants' Motion, the Court must conclude that "the plaintiff undoubtedly can prove no set of facts in support of [her] claims that would entitle [her] to relief" under a viable legal theory advanced in the complaint. *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996). Here, Defendants have not shown that Plaintiff can prove no set of facts in support of her claim that would entitle her to exemplary damages.

Accordingly, the Court will deny Defendants' Motion to Dismiss Count IV.

### IV. CONCLUSION

For the reasons articulated above, the Court will **GRANT IN PART**

Defendants' Motion to Dismiss [#5] as it relates to the issue of personal jurisdiction. Defendant Maureen Rosenbaum is therefore **DISMISSED** from the instant action.

**IT IS FURTHER ORDERED** that the Court will **DENY IN PART** Defendants' Motion to Dismiss [#5] as it relates to the presented issues of statute of limitations and failure to state a claim upon which relief can be granted for Counts III and IV.

**IT IS FURTHER ORDERED** that Defendants submit their Answer to Plaintiff's Amended Complaint by June 19, 2020.

**IT IS FURTHER ORDERED** that Plaintiff and Defendants meet with the Court for a telephonic Scheduling Conference on June 29, 2020 at 10:00 a.m.

**IT IS SO ORDERED**.

Dated:        June 1, 2020

/s/Gershwin A. Drain
HON. GERSWHIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 1, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager